768 A.2d 822 (2001)
338 N.J. Super. 276
GRUHIN & GRUHIN, P.A., Plaintiff-Respondent,
v.
Gerald W. BROWN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 2001.
Decided March 23, 2001.
*823 Albert C. Buglione, Wayne, argued the cause for appellant (De Yoe Heissenbuttel & Piekarsky, attorneys).
Paul J. Linker, argued the cause for pro se respondent Gruhin & Gruhin, P.A.
Before Judges PRESSLER, KESTIN,[1] and ALLEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendant Gerald W. Brown, a former client of plaintiff law firm, Gruhin & Gruhin, P.A., appeals from a summary judgment in favor of plaintiff for its unpaid legal fees in the amount of $60,197.33 plus interest and costs of suit. We affirm substantially for the reasons stated on the record by Judge Schott on October 22, 1999.
We add the following brief comments. Defendant, by written retainer agreement signed by him on July 20, 1996, engaged plaintiff to represent him in an action brought by his former wife in which she sought, among other relief, a judgment of divorce, child custody, appropriate financial arrangements, and punitive damages for a marital tort. The retainer agreement provided for defendant's payment of an initial sum of $15,000 against a final bill to be calculated at the rate of a maximum of $275 an hour for attorney time and $65 an hour for paralegal time. The agreement further provided for periodic billing statements and encouraged "frank and open discussion with regard to our bill." During the course of the representation, which concluded in March 1998, after the litigation was settled and the settlement placed on the record, plaintiff sent regular periodic statements to defendant detailing the legal services performed, the time *824 consumed by each, and the nature and amount of disbursements. According to the undisputed certification submitted in support of the motion for summary judgment, defendant never expressed dissatisfaction either with the amount of the bill, the services performed, or the quality of the representation, and he repeatedly promised to make payment. He never, however, made any additional payment after the original $15,000 retainer and, at the end of the litigation, the unpaid balance for fees and disbursements amounted to the approximately $60,000 set forth in the order. The total bill, to which the retainer had been applied, represented 373 hours of services over the two-year period of the representation.
Upon defendant's continued failure to pay the balance of the bill despite repeated requests, plaintiff served upon him the pre-action notice required by R. 1:20A-6, advising him of his opportunity for fee arbitration. Defendant did not respond. Finally, plaintiff commenced this action seeking payment. After issue was joined and shortly before trial, plaintiff moved for summary judgment supported by a statement of material facts, brief and certification with appropriate exhibits annexed. Defendant's answering papers included a counterstatement of material facts which asserted only that plaintiff had charged him more than his former wife's attorneys had charged her; that on three dates plaintiff had charged for more than ten hours of services; and that although plaintiff's services were satisfactory, they were "billed in an unreasonable and outlandish manner." The factual support for these assertions was defendant's own certification so attesting in the same conclusionary language. We further note that the supporting brief argued that summary judgment should be denied because of an unidentified dispute of material fact; because defendant had not been served with the billa wholly unsupported contention that even defendant's certification did not allege; and that the only appropriate forum was arbitrationthis despite defendant's failure to respond to the pre-action notice. And although the time for discovery had passed, defendant argued that depositions should be taken. Defendant, moreover, had not obtained an expert and was proposing to proceed to challenge the reasonableness and necessity of the services without an expert.
Obviously, a lawyer's bill for services must be reasonable both as to the hourly rate and as to the services performed. That is not only the lawyer's legal obligation but his ethical one as well. See R.P.C. 1.5; Rosenberg v. Rosenberg, 286 N.J.Super. 58, 69, 668 A.2d 84 (App. Div.1995). Defendant, an experienced and sophisticated businessman of considerable means, does not challenge the reasonableness of the hourly rates he agreed to, and there is nothing in this record suggesting that they were unreasonable. We are, moreover, satisfied that the hourly rates were entirely reasonable and consistent with prevailing standards in the legal community. As we understand defendant's argument, he is apparently contending that too many hours were spent on the representation resulting in too big a bill. But plaintiff's certification asserts that all of the services performed were both reasonable and necessary in representing defendant in the litigation and complying with his instructions, and there is absolutely nothing in this record to the contrary other than defendant's bald contention. Summary judgment was perfectly appropriate under the Brill standard. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
We are also satisfied that defendant misperceives the difference between a lawyer's claim against his own client under a retainer agreement between them and an allowance of counsel fees by the court against an adverse party under a fee-shifting rule or statute. As we made clear in Rosenberg v. Rosenberg, supra, 286 N.J.Super. at 63-67, 668 A.2d 84, the two situations have a disparate focus and require *825 a different level and standard of judicial scrutiny. Where a fee-shifting allowance is in issue in a matrimonial matter, the judge must consider such factors as the parties' respective financial circumstances, needs, abilities to pay, good faith, and, indeed, the whole host of factors that had been outlined by the courts and are now codified by R. 5:3-5(c). Consequently, the fee allowed, because of these factors, may well be less than the full value of the services performed.
A client who has retained an attorney and promised to pay him stands on a completely different footing from the recipient of a fee-shifting allowance. As between attorney and client, their agreement ordinarily controls unless it is overreaching or is violative of basic principles of fair dealing or the services performed were not reasonable or necessary. See, e.g., Cohen v. ROU, 146 N.J. 140, 155, 679 A.2d 1188 (1996) ("Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics"). Thus, although the court has the power and authority to review the fairness of the agreement and the reasonableness of the fee charged, it should ordinarily defer to the parties' agreement and the fee charged thereunder if it appears, as here, that they meet a prima facie test of fairness and reasonableness, the client utterly fails to come forward with anything of substance to rebut that prima facie showing, and no expert is produced to challenge the bill rendered as unreasonable. Cohen v. ROU, supra, 146 N.J. at 156, 679 A.2d 1188.
The judgment appealed from is affirmed.
NOTES
[1] Judge Kestin did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.