**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0496-19T2

MARIA D. NEWMAN,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

MARK T. NEWMAN,

       Defendant-Appellant/
       Cross-Respondent.

_____

Submitted January 6, 2021 – Decided February 5, 2021

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2265-11.

LaRocca Hornik Rosen Greenberg, attorneys for appellant/cross-respondent (Frank J. LaRocca and Rotem Peretz, on the briefs).

Price Meese Shulman & D'Arminio, PC, attorneys for respondent/cross-appellant (Cathy J. Pollak, of counsel and on the briefs; Aaron Cohen, on the briefs).

PER CURIAM

In this post-judgment matrimonial matter, defendant Mark T. Newman appeals from paragraphs one and two of an August 26, 2019 order entered by the Family Part judge denying his request for a recalculation of child support based upon a substantial change in circumstances and denying his request for a reallocation of responsibility between the parties for expenses not included in child support under the Child Support Guidelines in proportion to the parties' net incomes. Plaintiff Maria D. Newman cross-appeals paragraph seventeen of the order denying her request for counsel fees. We affirm.

I.

We derive the following pertinent facts from the record. The parties were divorced in November 2013, after eighteen years of marriage. They have a son, J.N.,[1] born in January 2008, age thirteen. The parties entered into a prenuptial agreement prior to their marriage. Following a lengthy trial, a judgment of divorce (JOD) was entered. The parties were granted equal parenting time with J.N., and neither party was designated as the parent of primary residence.

---

[1] We use initials to identify the child to protect and preserve his confidentiality. R. 1:38-3(d)(13).

A-0496-19T2

As per the amended judgment of divorce (AJOD), defendant was ordered to pay child support directly to plaintiff of $3000 per month. He was also obligated to pay 95% of J.N.'s summer camp, extracurricular activities, unreimbursed medical expenses, with the exception of the first $250 incurred per year in accordance with Rule 5:6A, equipment for sports and hobbies, cost of enrichment at school, and any extraordinary expenses as defined by law. Plaintiff has two children from a prior marriage and pays $562.50 per month in child support to the father of those children.

In July 2009, defendant became employed at Morgan Stanley and signed a promissory note for $2,259,000 in forgivable loans, with a 3% per annum rate of interest, "to recruit individuals from competitors." Defendant entered into two more such arrangements after meeting incentive goals: $627,500 in November 2009 and $288,960.71 in August 2011. These funds were deposited by defendant into an account in his sole name. Defendant claimed these assets were exempt from equitable distribution under the terms of the parties' prenuptial agreement. The AJOD, filed on December 11, 2013, which incorporated the trial judge's findings of fact and conclusions of law from the trial, stated "[p]laintiff works on a base salary plus commissions. The defendant

3

works based on commissions and has an advance which he must pay back to his employer over a period of time."

The AJOD provided it was "appropriate to base child support on the last three years' gross earned income for the parties." Plaintiff's gross earned income for the most recent three years preceding the divorce was: $59,930 in 2010; $67,732 in 2011; and $65,302 in 2012. Her average income was $64,141. Defendant's gross earned income for the three years preceding the divorce was: $989,851 in 2010; $1,076,553 in 2011; and $1,112,939 in 2012. His average gross earned income for those years was $1,059,780, which was the amount utilized by the trial court in establishing child support.

Defendant alleges he disagreed with the trial court's conclusions relative to his income set forth in the AJOD but chose to forgo appealing the issue. He now contends his income at the time of divorce was $650,000 to $700,000 and only exceeded $1,000,000 because of the forgivable loans from Morgan Stanley. According to defendant, each year during the loan term, a portion of the principal and interest associated with the loans was "forgiven" and attributed to him as income in the form of a bonus, thereby artificially inflating his income because he never actually received these amounts. In addition, defendant claims the promissory notes for the forgivable loans have been satisfied, and he is no

A-0496-19T2

longer eligible to receive such bonuses in the future. The final sums were forgiven in 2018. Defendant contends he has been paying an excessive amount of child support.

On January 28, 2019, plaintiff filed an ex parte order to show cause seeking injunctive relief before the Family Part judge regarding the parties' son J.N. Pursuant to a January 30, 2019 consent order, defendant's parenting time with J.N. was temporarily suspended and contact was limited to telephonic conversations on plaintiff's landline subject to recording. By consent, defendant agreed to commence anger management therapy and a parenting coordinator was appointed.

On July 22, 2019, defendant filed a motion seeking recalculation of his child support obligation arguing a substantial change in his financial circumstances. Plaintiff filed opposition to the motion and a cross-motion seeking counsel fees and costs incurred in connection with this matter. In his moving certification, defendant asserted that in 2018, his obligations under the promissory notes were fully satisfied, and he was no longer eligible to receive any similar bonuses going forward. By way of explanation, defendant submitted a letter dated May 9, 2019, from Joseph Vaccaro, Senior Vice President and Branch Manager of Morgan Stanley, explaining defendant's forgivable loans,

5

compensation package, and annual income throughout his career at Morgan Stanley. Mr. Vaccaro stated in pertinent part: "These bonuses averaged $401,675 per year over the last nine years. During this same period, [defendant] averages $634,565 per year in salary and commissions . . . ."

Defendant also argued his income was found to be $1,059,781 when child support was initially calculated at the time of divorce, and his annual average income had decreased to $634,565 between 2010 through 2018, a forty-percent difference. For 2019, defendant projected his income would be $632,519, based upon a base salary of $24,000, anticipated commissions, and other remuneration.

In her opposition and cross-motion, plaintiff argued defendant's motion was "premature conjecture" as to his contemplated 2019 income. She also contended her gross income declined to a three-year average of $58,766.84, her salary being $61,659 at the time the motions were considered. Plaintiff also contended defendant's net worth increased from $4,564,085 in 2013 to $5,683,000 in May 2019, while plaintiff's net worth was negative $191,070. Plaintiff further argued defendant's Schedule A and C expenses, exclusive of child support, were higher in 2019 than in 2012, confirming his ability to pay the $3000 child support obligation and 95% of J.N.'s supplemental and extraordinary expenses. In her cross-motion, plaintiff sought counsel fees for

A-0496-19T2

having to defend defendant's motion, which she claimed lacked merit and was motivated by his "reprehensible bad faith conduct."

The Family Part judge considered the motions on August 26, 2019. After hearing oral arguments, the judge denied both motions and entered a memorializing order that day. In her oral decision, the judge rejected defendant's argument that his 2019 income should be extrapolated and projected for 2019 based on year-to-date paystubs he submitted with his moving papers. The judge found "there's nothing to say . . . what he's going to earn. There may be incentives and information or commissions that come later in the year in addition . . . ." Consequently, the judge found defendant failed to demonstrate a prima facie showing of changed circumstances warranting modification of his child support obligation. The judge also noted that defendant failed to show J.N.'s needs have lessened and maintained defendant's obligation to pay 95% of the child's supplemental and extraordinary expenses.

In denying plaintiff's cross-motion, the judge found plaintiff had the ability to pay her own counsel fees and defendant's motion was not filed in bad faith. This appeal and cross-appeal followed.

On appeal, defendant argues the judge erred in denying his motion for modification of child support and child-related expenses not included in child

A-0496-19T2

support because he established a prima facie case of a substantial change of circumstances based upon a diminution in his income. In her cross-appeal, plaintiff argues the judge correctly denied defendant's motion but erred in not granting her request for counsel fees.

## II.

Our review of the Family Part's determinations involving child support is limited. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). "'The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Crespo v. Crespo, 395 N.J. Super. 190, 193 (App. Div. 2007) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). The reviewing court should "'not disturb the factual findings and legal conclusions of the [motion] judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Catabran, 445 N.J. Super. at 587 (first alteration in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"'When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion.'" Ibid. (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App.

Div. 2012)).   Reversal is appropriate only if the award is "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice."  Ibid.  (quoting Jacoby, 427 N.J. Super. at 116).

However, our review of purely legal issues is de novo, "because the trial court is in no better position than [the Appellate Division] when interpreting a statute or divining the meaning of the law."  D.W. v. R.W., 212 N.J. 232, 245-46 (2012); see also Catabran, 445 N.J. Super. at 587.  Child support orders are always subject to review and modification upon a showing of "changed circumstances."  Lepis v. Lepis, 83 N.J. 139, 146 (1980).  Upon a motion to modify an order, "the moving party has the burden to make a prima facie showing of [the] changed circumstances warranting relief."  Isaacson v. Isaacson, 348 N.J. Super. 560, 579 (App. Div. 2002).

When a modification application is made, the court should examine evidence of the paying spouse's financial status in order "to make an informed determination as to 'what, in light of all of the [circumstances] is equitable and fair.'"  Lepis, 83 N.J. at 158 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977) (alteration in original)).  The party seeking modification of a prior order bears the burden of making a prima facie showing of changed circumstances.  Id. at 157.  Changed circumstances may "include 'an increase in the cost of living, an

increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law.'" Quinn v. Quinn, 225 N.J. 34, 49 (2016) (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)).

In assessing changed circumstances the court must typically find more than just a downward turn in economic circumstances, especially where, as here, the payor's reduced income is still relatively high. This court has previously noted that "[u]nderpinning the basis of every support order is the proposition that the payor has the 'ability to pay' the amount set, or agreed to." Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998). Support orders may be modified upon a showing of changed circumstances, but a mere reduction in income is not dispositive on its own. Generally, a payor must show that there has been a "substantial, non-temporary change[] in [their] ability to support [themselves] or pay support." Gordon v. Rozenwald, 380 N.J. Super. 55, 67-68 (App. Div. 2005).

This court has emphasized that where a payor continues to live lavishly, a showing of substantial change in circumstances is unlikely. Donnelly v. Donnelly, 405 N.J. Super. 117, 130-31 (App. Div. 2009). We have also previously noted that where a payor has had a reduction in their income they

A-0496-19T2

generally must also "demonstrate how he or she has attempted to improve the diminishing circumstances." Id. at 130 n.5; see also Aronson v. Aronson, 245 N.J. Super. 354, 361 (App. Div. 1991).

Additionally, this court recognizes that as with all child support decisions "[a]ny decision must be made in accordance with the best interests of the children." Jacoby, 427 N.J. Super. at 116. The court must therefore also weigh whether a modification is equitable and fair. Lepis, 83 N.J. at 158. This necessarily includes examining the situation of each party, including their assets, property, and capital assets. Heller-Loren v. Apuzzio, 371 N.J. Super. 518, 531 (App. Div. 2004); see also Mowery v. Mowery, 38 N.J. Super. 92, 105 (App. Div. 1955).

In addition, Rule 5:5-4(a)(2) provides: "When a motion or cross-motion is filed to establish alimony or child support, the pleadings filed in support of, or in opposition to the motion, shall include a copy of a current case information statement." Rule 5:5-4(a)(4) requires a "movant's case information statement previously executed or filed in connection with the order, judgment or agreement sought to be modified" to also be appended.

The reason given by the Family Part judge for denying defendant's request for modification was his 2019 income was uncertain at the time the motion was

decided. The judge noted defendant's dividend income and capital gains listed on his tax return did not show that "his financial circumstances have changed for the . . . worst . . . ." Further, the judge emphasized when child support was set at $36,000 per year, that equated to 3.4% of defendant's income. Assuming defendant was on track to earn $760,000 in 2019, the child support obligation would be 4.7% of his income, less than a 1.5 percentage-point change. And, since the parties' combined income exceeded $187, 200, under N.J.S.A. 2A:34-23(a), the parties' assets had to be considered in the child support calculation.

> [I]f the combined net income of the parents is more than $187,200 per year, the [c]ourt shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,000) and the factors specified in N.J.S.A. 2A:34-23. Thus, the maximum guidelines award in Appendix IX-F <u>represents the minimum award for families with net incomes of more than $187,200 per year.</u>
>
> [Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A to <u>R.</u> 5:6A, www.gannlaw.com (2021) (emphasis added).]

We reiterate, the factors specified in N.J.S.A. 2A:34-23, which the court must consider in determining the child support award in addition to the base guideline child support award, are as follows:

> 1) Needs of the child; 2) Standard of living and economic circumstances of each parent; 3) All sources

12

of income and assets of each parent; 4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment; 5) Need and capacity of the child for education, including higher education; 6) Age and health of the child and each parent; 7) Income, assets and earning ability of the child; 8) Responsibility of the parents for the court-ordered support of others; 9) Reasonable debts and liabilities of each child and parents; and 10) Any other factors the [c]ourt may deem relevant.

Moreover, we have previously addressed the delicate balance the Family Part judge must strike in establishing child support obligations in high-income situations.

> Even with high income parents, the court still must 'determin[e] needs of a child in a sensible manner consistent with the best interests of the child.' Isaacson, 348 N.J. Super. at 584. '[T]he law is not offended if there is some incidental benefit to the custodial parent from increased child support payments.' Ibid. While 'some incidental benefit' is not offensive, 'overreaching in the name of benefiting a child is.' Id. at 585. '[A] custodial parent cannot[,] through the guise of the incidental benefits of child support[,] gain a benefit beyond that which is merely incidental to a benefit being conferred on the child.' Loro v. Del Colliano, 354 N.J. Super. 212, 225-26 (App. Div. 2002).
>
> [Strahan v. Strahan, 402 N.J. Super. 298, 308 (App. Div. 2008) (alterations in original).]

Here, the judge also scrutinized defendant's assets to ascertain if a prima facie change of circumstances was met. The judge found, based on defendant's 2012 and 2019 case information statements, his net worth increased by $1,100,000 since the time of the divorce to $5,683,000. Moreover, the judge aptly highlighted that defendant's monthly Schedule A expenses were $11,495 in 2012 and $16,097 in 2019, an increase of approximately $3500. Defendant's monthly Schedule C expenses increased from $5105 in 2012 to $6498 in 2019, a difference of $1400. J.N.'s older age was properly not deemed a relevant change of circumstances either by the judge.

Moreover, the record demonstrated that defendant's alleged change of circumstances was not permanent. Miller v. Miller, 160 N.J. 408, 420 (1999) (citing Lepis, 83 N.J. at 157). Accordingly, we discern no abuse of discretion on the part of the Family Part judge, and her decision was not based on a palpably incorrect basis. The judge reviewed defendant's financial situation and found his income had not substantially changed since the time the AJOD was entered.

We are also unpersuaded by defendant's argument that J.N.'s needs have also decreased because he failed to provide any evidence to support his contention. The moving party for a downward modification of support has the

14

burden of proving the child's needs have lessened. Jacoby, 427 N.J. Super. 120-21. Here, defendant has not met that burden, and the judge correctly declined to recalculate the child support obligation.

We are likewise unpersuaded by defendant's argument that because plaintiff now resides in a "five-bedroom, four-bathroom [3300] [square] [foot] home," the benefit she gains is more than merely incidental. The payee spouse, namely plaintiff here, does not have to account for her expenditure of child support monies as defendant implies. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2021). Saliently, defendant's parenting time with J.N. was suspended in early 2019 by the judge, and plaintiff did not receive an increase in child support notwithstanding the fact that child support was calculated based on an equally shared, alternating week basis. Therefore, defendant's argument is unavailing.

We also disagree with defendant's argument that the judge erred by not recalculating the percentage share of each party's responsibility to pay J.N.'s supplemental and extraordinary child support expenses. Defendant has not proven that his earned and unearned income now represents only 91% of the gross combined income of the parties. The judge was correct in pointing out

that "attendant to [child support] is the reallocation for the responsibility of expenses. And, . . . in my mind, I view those two things as inextricably intertwined." The judge's decision was based upon substantial, credible evidence in the record. Therefore, defendant's motion was properly denied.

The judge also properly rejected plaintiff's request that defendant start paying his child support obligation through the Department of Probation. In her ruling, the judge explained:

> I understand that, in the history of this family, that at one point there—payment was made through the Department of Probation. And, ultimately there was a consent order removing it from probation's enforcement and rather calling for direct pay.
>
> And that—the order itself sets forth the circumstances where—wherein the case would be payable again through probation, which required—or—the instance that would give rise to that would be if [defendant] missed two child support payments—and I believe it was in a row. Give me one minute. Two missed child support payments.
>
> And, that order was June 27th, 2014. And, I do not find that that condition precedent to the consent order has . . . occurred here. So, I am . . . denying plaintiff's application to do that.

We add the following brief remarks. Rule 5:7-4(b) provides: "Enforcement of child support orders shall presumptively be in the county in which the child support order is first established (county of venue) . . . ."

A-0496-19T2

N.J.S.A. 2A:17-56.13 provides, "in every award for alimony, maintenance or child support payment, the judgment or order shall provide that payments be made through the Probation Division of the county in which the obligor resides, unless the court, for good cause shown, otherwise orders." (Emphasis added).

The judge was correct in concluding that plaintiff has not shown that defendant missed two consecutive child support payments. Hence, the condition precedent set forth in the consent order was not satisfied, and there was no basis upon which the judge should have ordered child support payments to be made through the Probation Division.

### III.

We next address plaintiff's argument that the Family Part judge erred and abused her discretion in denying plaintiff's request for counsel fees and costs because she misapplied the factors enumerated under Rule 5:3-5(c). Specifically, plaintiff claims defendant filed his motion in bad faith, and the judge's finding that plaintiff had sufficient income to pay her attorney's fees was inconsistent with the record.

Counsel fee determinations rest within the trial judge's sound discretion. Williams v. Williams, 59 N.J. 229, 233 (1971). We will disturb a trial court's determination on counsel fees "only on the 'rarest occasion,' and then only

because of clear abuse of discretion." Strahan, 402 N.J. Super. at 317 (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"A lawyer's fee must be reasonable." Giarusso v. Giarusso, 455 N.J. Super. 42, 50 (App. Div. 2018) (quoting Rosenberg v. Rosenberg, 286 N.J. Super. 58, 69 (App. Div. 1995)). Determining the reasonableness of the fee involves "determining the number of hours reasonably expended multiplied by a reasonable hourly rate." Id. at 51 (citing Rendine, 141 N.J. at 334-35).

In determining whether to award counsel fees the trial court must consider the factors enumerated in Rule 5:3-5(c):

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results

18

obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Here, plaintiff's attorney certified that the estimated fees and costs incurred by plaintiff in connection with this matter were $10,538.50. The judge evaluated the reasonableness of the fees requested by each party, as required under Rule 1.5, and determined the fees requested by each party were reasonable: "Both the attorneys who are representing the parties in this matter are seasoned attorneys, both of whom have rates that are reasonable in light of their years of experience and years of—in light of the vicinage in which they practice."

In evaluating the Rule 5:3-5(c) factors the judge noted in her analysis that each party had the ability to pay their own fees. Plaintiff does not contend she is unable to pay her counsel fees; rather she stresses given the disparity in the parties' incomes, defendant should pay her fees. The judge specifically noted that defendant did not litigate this matter in bad faith or unreasonably. We discern no abuse of discretion in the judge's fee analysis. Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (noting that counsel fee awards are committed to the Family Part's "sound discretion"); see also Loro v. Colliano, 354 N.J. Super. 212 (App. Div. 2002).

We have fully considered the balance of the arguments raised by both parties on appeal and conclude that they lack sufficient merit to require comment. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0496-19T2