**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1411-20

3000 KENNEDY BOULEVARD,
LLC,

     Plaintiff-Appellant,

v.

PARKER IBRAHIM & BERG,
LLP,

     Defendant-Respondent.

_____

        Argued December 15, 2021 – Decided July 13, 2022

        Before Judges Hoffman, Geiger, and Susswein.

        On appeal from the Superior Court of New Jersey, Law
        Division, Hudson County, Docket No. L-0609-19.

        Vincent J. La Paglia argued the cause for appellant.

        Daniel A. Schleifstein argued the cause for respondent
        (Parker Ibrahim & Berg, LLP, attorneys; Scott W.
        Parker, James P. Berg, and Daniel A. Schleifstein, on
        the brief).

PER CURIAM

Plaintiff 3000 Kennedy Boulevard, LLC appeals from four Law Division orders that: 1) granted summary judgment in favor of the law firm that represented plaintiff in a prior lawsuit, dismissing plaintiff's claims against the law firm with prejudice and granting the law firm's counterclaims against plaintiff; 2) denied plaintiff's motion for reconsideration; 3) entered judgment against plaintiff in the amount of $496,463.99; and 4) denied plaintiff's cross-motion to stay enforcement of the judgment. For the reasons that follow, we reverse the Law Division orders, vacate the judgment entered in favor of defendant, and remand for further proceedings.

I.

3000 Kennedy Boulevard, LLC v. Micro Tech Litigation

Plaintiff, a commercial landlord, owns the building at 3000 Kennedy Boulevard in Jersey City, where it leases office space to different commercial tenants. Plaintiff's principal is David Tasci.

In 2015, plaintiff sued a former tenant, Micro Tech Training Center (Micro Tech) for failure to pay rent, with Micro Tech claiming constructive eviction. See 3000 Kennedy Blvd. v. Micro Tech Training Center, No. L-4212-15 (Law Div. June 26, 2018). Attorney Boris Peyzner (Peyzner) of the law firm Bressler, Amery & Ross, P.C. (the Bressler firm) represented plaintiff in that

2

action.  From 2015 through 2017, plaintiff paid the Bressler firm $247,906.85 for its services.

In late 2017, Peyzner informed plaintiff that he was leaving the Bressler firm to join the firm of defendant Parker Ibrahim & Berg, LLP (defendant or the Parker firm) and was bringing plaintiff's case with him.  On January 3, 2018,[1] Tasci signed a written fee agreement confirming plaintiff's hiring of the Parker firm.

The fee agreement explained the basis for fees and expenses and listed the hourly billing rates for Peyzner ($365.00), associates ($340.00-$380.00), partners ($440.00-$480.00), and paralegals ($130.00).  The agreement specifically stated, "As you know, Peyzner will handle most of the work [on] this matter . . . ."[2]

Regarding fees, expenses, and the retainer amount, the fee agreement stated:

---

[1]  The copy of the agreement contained in the record lists the date as January __, 2018, but in its reply to defendant's request for admissions, plaintiff admitted to signing the agreement dated January 3, 2018.

[2]  Notwithstanding this representation, defendant would ultimately send plaintiff six invoices that billed plaintiff $193,011.50 for Peyzer's work, $129,744.00 for other associates' work, $182,599.00 for other partners' work, $19,851.00 for paralegals' work, and $25,398.44 for additional expenses, for a total of $550,605.44.

A-1411-20

We have agreed and we will bill you for all legal fees, disbursements and out-of-pocket expenses made or incurred on your behalf. Invoices will be sent to your attention at the address set forth above. Expenses typically include such items as document reproduction, printing, court reporting charges, travel expenses, mailing charges, messenger services, and filing fees. Please note, if we anticipate that substantial expenses will be incurred on your behalf, we will require that you pay the vendor directly and/or we may require a deposit from you in order to cover such expenses. By countersigning this agreement, you agree to be responsible for your legal fees and other expenses incurred on your behalf in this matter.

It has been agreed that we will use our best professional efforts to obtain a resolution satisfactory to you. In return, you have agreed to pay an initial retainer in the amount of $20,000.00. Should the retainer drop below $10,000.00, you agree to replenish it to $10,000.00 within two weeks of notice from us. Further, you have agreed to increase the retainer to $50,000.00 as soon as the case is within [sixty] days of trial. The retainer will be refunded, to the extent it has not been utilized in fees and costs related to your representation, upon resolution of this matter.

The fee agreement further provided:

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning the matter and the results that might be anticipated. Any such statement made by any partner or employee of the Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee.

A-1411-20

Tasci's signature appears at the bottom of the fee agreement. According to plaintiff, it paid the $20,000 retainer fee and an additional $20,000 upon signing the fee agreement.

After receiving billing invoices for defendant's work in January and February 2018, Tasci complained to Peyzner that the bill exceeded Peyzner's prior estimates, that plaintiff could not pay that rate, and instructed that Peyzner alone work on the file. In response, on March 23, 2018, defendant moved, before the trial judge in the underlying matter against Micro Tech, to be relieved as counsel for plaintiff. Defendant cited Rule of Professional Conduct (RPC) 1.16(b), which permits a lawyer's withdrawal "when 'the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled.'" Peyzner submitted an accompanying certification that stated defendant's relationship with plaintiff had "reached a point of irretrievable differences in that plaintiff had not met the responsibilities outlined in the retainer agreement." Specifically, Peyzner claimed that plaintiff had

> failed to comply with its obligation to replenish an evergreen retainer and its separate obligation to remit a trial retainer at least [sixty] days before trial. In addition to and as a result of the foregoing, [p]laintiff ha[d] failed to pay its monthly invoices and a

5

substantial outstanding unpaid balance has already accrued.

In response to defendant's application, the trial judge ordered Tasci to "appear and show cause" as to why the judge should not relieve defendant from representing plaintiff in the underlying matter. According to plaintiff, Tasci was not advised of this hearing date. Notwithstanding the entry of the order to show cause, defendant continued to represent plaintiff in the Micro Tech lawsuit, including representing plaintiff during a twelve-day bench trial, as well as during post-trial proceedings. Despite the significant work documented in defendant's billing, the trial court rejected all of plaintiff's claims against Micro Tech; in addition, the court ruled that plaintiff owed damages to Micro Tech for constructively evicting it.

Plaintiff's Declaratory Judgment Action

On January 11, 2019, defendant served plaintiff a notice advising that it owed defendant an outstanding balance of $496,463.99, plus interest, and warning it would sue if plaintiff failed "to make arrangements for prompt payment." In response to defendant's letter threatening litigation, plaintiff filed suit against defendant. On February 11, 2019, plaintiff filed a declaratory judgment action against defendant. Plaintiff's complaint alleged that "[d]efendant did not deal with plaintiff fairly or in good faith" by excessively

6

charging plaintiff for unnecessarily performed legal services and by charging a "substantially higher" fee than the estimate provided to plaintiff by defendant when negotiating representation. The complaint sought a "[d]eclaration that . . . defendant is not entitled to any money from . . . plaintiff" and a "[d]eclaration that . . . defendant must return the retainer paid by . . . plaintiff", in addition to other damages and fees.

Defendant answered plaintiff's complaint on April 2, 2019, denying all allegations of improper conduct and pleading five counterclaims for relief: 1) breach of contract (count one), 2) breach of covenant of good faith and fair dealing (count two), 3) open book account (count three), 4) quantum meruit (count four), and 5) unjust enrichment (count five). On May 1, 2019, defendant served plaintiff with multiple discovery requests: a first set of requests for admission; notice of depositions for plaintiff's corporate representatives, which included the deposition of Tasci on July 16, 2019; a first set of interrogatories; and a first set of demand for production of documents.

Plaintiff responded to defendant's first set of requests for admission on June 7, 2019. Therein, plaintiff admitted it "executed the document dated January 3, 2018", admitted defendant provided it legal services, admitted it "never declined any legal services that [d]efendant provided", and admitted it

7

"received monthly legal invoices accounting for [d]efendant's legal fees and costs incurred on behalf of and for the benefit of [p]laintiff . . . ."

When plaintiff delayed in providing answers to interrogatories, defendant adjourned the depositions of Tasci and other corporate officers while reserving the right to schedule them upon receipt of plaintiffs' outstanding discovery. After plaintiffs provided the discovery, defendant rescheduled the depositions for September 5, 2019; however, the parties agreed to adjourn these depositions due to plaintiff counsel's scheduling issues. Defendant rescheduled the depositions for January 27, 2020, the discovery end date; however, two days beforehand, plaintiff's attorney advised that Tasci would only appear for a deposition "with the understanding that the discovery end date will be extended with consent for an additional [sixty] days." When defendant rejected this condition, discovery ended without Tasci's deposition. Defendant moved for summary judgment the following day.

Defendant's Summary Judgment Motion

In support of its summary judgment motion, defendant filed the certification of partner Scott W. Parker, who asserted the invoices sent to plaintiff "reflect work performed that was reasonable and necessary in representing [plaintiff] in the [l]itigation in full accordance with the [retainer

a]greement." Parker's certification does not reflect his level of involvement, if any, in his firm's representation of plaintiff. No other supporting certifications were provided. Defendant's invoices do not reflect that Parker performed services regarding the Micro Tech case.

Plaintiff filed opposition to the motion, including a certification from Tasci. Tasci certified that when plaintiff retained defendant in January 2019, Peyzner provided a budget for the trial. According to Tasci:

> The "budget" was extremely high and I told him that. Peyzner explained that the legal fee at his new firm would be much lower[,] for a number of reasons. First, because Peyzner represented that if he would take my file with him to the new firm, there would be no need for another attorney to waste countless hours reviewing the file. Second, Peyzner advised that at his new firm, he would be the attorney handling the file and there would be no need for other attorneys to be billing the file as in the Bressler firm; he advised he would be the only attorney billing on the file. Lastly, Peyzner advised that the new firm would not engage in excessive billing practices[,] like putting a number of attorneys on the file for essentially reviewing the same material. Peyzner advised me that despite the Bressler budget, in his mind, the file was essentially trial ready and the Bressler budget was too high. Therefore, the retainer for [defendant] was only $20,000. Peyzner said [the Bressler firm] would supply a new budget, but [the] firm never did.

Tasci's certification also stated that he never agreed "to pay for more than one attorney" and that he objected to there being others besides Peyzner representing him at trial.

On March 5, 2020, the trial court granted defendant's motion for summary judgment, dismissed plaintiff's claims with prejudice, and granted all of defendant's counterclaims. The court rendered an oral opinion explaining its decision. First, the court identified the issues as "whether there are genuine issues of material fact as to the reasonableness of the fees and whether there's a contract." Immediately, the court found "there is a valid contract here."

The court also found "no genuine issue of material fact remain[s] as to the fairness and reasonableness of the fe[e]s" because "defendant's fees were reasonable and the plaintiff failed to show otherwise." The court stated it had examined the invoices "and they seemed to be very detailed descriptions, down to the [ten]th of the hour, the rates. And these bills have been given to plaintiff on numerous occasions."

The court explained that plaintiff "failed to produce any evidence to raise a genuine issue of material fact that either the defendant's rates were unreasonably high or that the amount deviated from common standards." According to the court, plaintiff's only evidence was a "self-serving and

sweeping certification" that stated plaintiff complained to defendant the bills were too high, and stated that the parties orally agreed the fees would not exceed a certain budget and agreed only Peyzner would perform work on the case. Notably missing was evidence in the form of emails, letters, texts, affidavits or certifications questioning why professionals other than Peyzner were working on this case and that the rates were too high, or that the work performed was not necessary, or taking too long to accomplish. The court also noted that plaintiff did not produce an expert to "explain why the fees were unreasonable, too high, or how . . . defendant deviated from common practices in the field." Finally, the court noted plaintiff failed to convincingly attack the underlying retainer agreement, which the court found "perfectly fair."

<u>Plaintiff's Motion for Reconsideration</u>

Plaintiff moved for reconsideration of the summary judgment order, and the motion court heard oral argument on this motion on April 9, 2020. At oral argument, plaintiff argued that the court failed to appreciate that defendant bore the burden of proving its fees were reasonable, and that defendant's invoices did not show the fees charged were reasonable. Plaintiff highlighted certain invoice entries as unreasonable, including billing for three attorneys attending trial when only two attended and billing for defendant's motion to be relieved as counsel.

Plaintiff contended there were genuine issues of material fact as to the reasonableness of the agreement because none of defendant's attorneys who worked on plaintiff's case certified the billing was reasonable or that the contract was not modified orally.

On April 20, 2020, the trial court entered an order denying plaintiff's motion for reconsideration and explained its reasoning orally on the record. The court cast plaintiff disputing individual billing entries on the invoice, at this stage, when it did not contest individual entries previously to plaintiff, as "seeking another bite at the apple . . . ." Nevertheless, the court found that all the billed work "was done in accordance with the fee agreement." The court also re-emphasized the lack of evidence showing the parties orally modified the retainer agreement or that plaintiff objected to the invoices when billed. Thus, the court found its "previous decision was not based on a palpably incorrect or irrational basis, and it's not obvious to the [c]ourt that the [c]ourt either did not consider or failed to appreciate the significance of probative . . . competent evidence."

Defendant then moved for the court to enter judgment against plaintiff. On November 18, 2020, defendant filed a cross-motion to stay enforcement of the judgment pending appeal pursuant to Rule 2:9-5(b). On January 2, 2021, the

motion court denied plaintiff's cross-motion because there was no evidence the matter had been appealed and plaintiff cited no other proper authority for the motion. On the same date,[3] the trial court entered a second order entering judgment in favor of defendant "in the amount of $496,463.99."

On January 27, 2021, plaintiff filed its notice of appeal, which it amended on February 2, 2021. On February 3, 2021, plaintiff filed a motion in the trial court, seeking to stay of enforcement of the judgment pending appeal; however, the record before us does not indicate if the motion court ever ruled on the motion.

On appeal, plaintiff presents the following arguments:

I. PLAINTIFF'S EVIDENCE IN OPPOSING SUMMARY JUDGMENT WAS AS COMPETENT AS (IF NOT SUBSTANTIALLY MORE COMPETENT THAN) THE INVOICES STAPLED TO THE CERTIFICATION OF AN ATTORNEY WHO HAD NO PERSONAL KNOWLEDGE OF THE UNDERLYING FACTS; THE MARCH 5, 2020 ORDER GRANTING SUMMARY JUDGMENT WAS ERRONEOUS, AND IT (AND THE SUBSEQUENT JUDGMENT) SHOULD BE REVERSED.

II. WHEN THE MOTION JUDGE OPINED THAT SPECIFIC EXAMPLES OF UNREASONABLE BILLING AND COMPLAINTS SHOULD

---

[3] The two orders mistakenly list the date as January 2, 2020, instead of 2021.

HAVE BEEN CITED, PLAINTIFF SOUGHT RECONSIDERATION OF THE INTERLOCUTORY RULING; RECONSIDERATION SHOULD HAVE BEEN GRANTED.

III. THERE HAS BEEN NO RULING ON PLAINTIFF'S MOTION TO STAY ENFORCEMENT OF THE JUDGMENT PENDING THIS APPEAL.

## II.

Appellate courts review grants of summary judgment de novo, "applying the same standard governing the trial court." Brennan v. Lonegan, 454 N.J. Super. 613, 618 (2018) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). Rule 4:46-29(c) provides that a trial court should grant summary judgment:

> [I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

The court need only submit an issue to the trier of fact when the non-moving party has presented sufficient evidence such that a "rational factfinder"

14

could "resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). However, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Ibid. Ultimately, "when the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Ibid. (internal citations omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"A retainer agreement between an attorney and client is a contract, but not an ordinary contract. '[T]he unique and special relationship between an attorney and a client' requires that a retainer agreement satisfy not only ordinary principles governing contracts, but also the professional ethical standards governing the attorney-client relationship." Balducci v. Cige, 240 N.J. 574, 592 (2020) (quoting Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 529 (App. Div. 2009)). Thus, "[f]ee agreements that contravene the Rules of Professional Conduct and public policy are not enforceable." Ibid.

RPC 1.5(a) provides:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and the results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

8) whether the fee is fixed or contingent.

An additional consideration is whether the lawyer has made "[f]ull and complete disclosure of all charges which may be imposed upon the client." Balducci, 240 N.J. at 592 (quoting Alpert, 410 N.J. at 531) (alteration in original). For a fee to be reasonable, the lawyer must have "explain[ed] the charges and costs for which the client is responsible, beyond the hourly rate, to

16

permit the client to make an informed decision whether to retain the attorney." Id. at 593. Indeed, this court has held the RPCs "require[] an attorney to present a client the attorney has not regularly represented, in writing, at the time of retention, all of the fees and costs for which the client will be charged, as well as the terms and conditions upon which the fees and costs will be imposed." Alpert, 410 N.J. at 532. "Absent such complete detailed written disclosure presented to and assented to by the client, . . . the attorney may not . . . collect such fees and costs." Ibid. In Alpert, the court ruled an attorney could not collect fees for expenses not explicitly delineated in the retainer agreement or mentioned when the agreement was forged. Id. at 535-37.

"Ultimately, 'the attorney bears the burden of establishing the fairness and reasonableness of'" a fee arrangement. Balducci, 240 N.J. at 594 (quoting Cohen v. Radio-Elects Officers Union, 146 N.J. 140, 156 (1996)). This burden is satisfied by a preponderance of the evidence. Giarusso v. Giarusso, 455 N.J. Super. 42, 50 (App. Div. 2018).

However, we have held that when a retainer agreement "meet[s] a prima facie test of fairness and reasonableness," and "the client utterly fails to come forward with anything of substance to rebut that prima facie showing," courts

17

should "defer to the parties' agreement and the fee charged thereunder . . . ." Gruhin & Gruhin, P.A. v. Brown, 338 N.J. Super. 276, 281 (App. Div. 2001).

Here, the trial court concluded there was no evidence showing plaintiff objected to others besides Peyzner working on the case or to the amount of work for which defendant billed plaintiff besides plaintiff's "self-serving and sweeping certification." However, attached to plaintiff's opposition to defendant's summary judgment motion was Peyzner's March 2018 certification from the underlying lawsuit requesting permission from the court to withdraw as plaintiff's counsel. Peyzner certified that he "repeatedly spoke to . . . Tasci to request [p]laintiff comply with its obligations," and "Tasci advised that [p]laintiff is unable to comply with its obligations . . . ." The record also contains the order to show cause and invoices related to defendant's withdraw petition.

Thus, the record contains evidence supporting plaintiff's contention that it objected to the amount defendant billed, to the point defendant filed an application to be relieved as counsel. This evidence of plaintiff's objection to the billing likewise serves as evidence supporting plaintiff's claim that defendant made oral representations to plaintiff that contradicted the terms of defendant's retainer agreement. "An attorney cannot give an oral assurance to a client that conflicts with a written retainer agreement and expect to find refuge in the parol

A-1411-20

evidence rule." Balducci, 240 N.J. at 594. Since the Court in Balducci held that oral representations made to a client may alter a retainer agreement's written terms or render it unreasonable, id. at 593, the evidence of plaintiff's objection to defendant's billing demonstrates a genuine issue of material fact as to the reasonableness of defendant's charged fees. Ultimately, the testimony of Tasci and Peyzner, and the assessment of their credibility, will likely determine the outcome of this case, as it did in Balducci. Id. at 581. Viewing this evidence in the light most favorable to plaintiff, a rational factfinder could find that the evidence of plaintiff's objection to defendant's billings creates a genuine issue of material fact as to the reasonableness of defendant's fees.

Additionally, the motion court's summary judgment decision erroneously failed to articulate its consideration of the relevant factors set forth at RPC 1.5(a). A cursory review of the RPC 1.5(a) factors demonstrates the motion court erred by finding the billing entries were reasonable because they were detailed. The court's reasoning would have benefitted from an exploration of the following factors: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;" "(3) the fee customarily charged in the locality for similar legal

19

services;" and "(4) the amount involved and the results obtained . . . ." RPC 1.5(a).

Factor four is notable because defendant billed plaintiff a fee greater than the amount at issue in the underlying suit. Plaintiff's suit against Micro Tech sought approximately $420,000 in damages whereas defendant billed plaintiff $496,463.99. Additionally, plaintiff had already paid approximately $250,000 to the Bressler firm for its earlier representation in the matter. We further note that the court failed to consider whether defendant sufficiently explained to plaintiff the foreseeable costs of its representation when entering into the retainer agreement.

In sum, we find sufficient evidence in the record to create a genuine issue of material fact as to whether the fees charged by defendant were reasonable. A rational factfinder could rule in favor of plaintiff, the nonmovant, based on defendant's oral representations to plaintiff, defendant's failure to sufficiently explain the potential fees, plaintiff's expectations based on its interpretation of the fee agreement, the disproportionateness of the fees compared to the amount at issue, or a reasoned consideration of the other factors listed at RPC 1.5(a).

A-1411-20

Plaintiff's Motion for Reconsideration

Appellate courts review a trial court's denial of a motion for reconsideration made pursuant to Rule 4:49-2 for abuse of discretion. Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 441 N.J. Super. 369, 372 (App. Div. 2015) (citing Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996)). A trial court should only grant a motion for reconsideration when "1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence[,]" or 3) "if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application . . . ." Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, the motion court should have granted plaintiff's motion for reconsideration. Reconsideration was appropriate because the motion court based its decision that defendant's fee was reasonable on "a palpably incorrect or irrational basis," i.e., without considering the factors set forth at RPC 1.5(a) or discussed in Balducci. Furthermore, reconsideration was also warranted because the motion court failed to appreciate the evidence showing that

defendant attempted to withdraw representation after plaintiff contested the fees charged. We therefore reverse the orders under review, vacate the judgment in favor of defendant, and remand for further proceedings.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-1411-20